UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARY ANN RICHARDS,

                                           Plaintiff,                7:12-CV-409
      vs.                                                 (NAM/ATB)

MASSENA CENTRAL SCHOOL DISTRICT,

                                      Defendant.
_____

**APPEARANCES:**                        **OF COUNSEL:**

D'ORAZIO PETERSON, L.L.P.        Giovanna A. D'Orazio, Esq.
125 High Rock Avenue             Scott M. Peterson, Esq.
Saratoga Springs, New York  12866
*Attorney for Plaintiff*

THE LAW FIRM OF FRANK W. MILLER    Bryan Georgiady, Esq.
6575 Kirkville Road
East Syracuse, New York 13057
*Attorney for Defendant*

**Norman A. Mordue, Senior United States District Judge**:

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

This is a suit for interference with Family and Medical Leave Act ("FMLA")

rights, 29 U.S.C. § 2601 *et. seq*., and retaliation under the FMLA.  The defendant, Massena

Central School District ("District"), moves presently for summary judgment dismissing plaintiff's

complaint.  Plaintiff opposes defendant's motion.

## II.    RELEVANT FACTUAL BACKGROUND

During the time period relevant to the complaint, plaintiff, Mary Ann Richards, worked the

3 p.m. to 11 p.m. shift at Massena Central High School as a cleaner.  Plaintiff generally worked

nights, Monday through Friday.  From the beginning of her employment until the present day, plaintiff has received FMLA-covered leave time on six different occasions.  Four of those occasions occurred prior to February 24, 2010.  Prior to her FMLA request of February 24, 2010, plaintiff had never accused the District of unlawfully interfering with her right to FMLA benefits.

On February 24, 2010, plaintiff submitted a request for intermittent FMLA-covered leave time based on her stepdaughter's serious medical condition.  On March 2, 2010, plaintiff was absent from work for half a day.  The March 2, 2010, absence was taken for "stepdaughter-related" medical reasons.  Plaintiff's Absence Form covering that absence stated "please take 4 hrs from vacation – Had emergency had to go to E.R. for my stepdaughter, F.M.L.A. Leave."  The District asserts that pursuant to its policy, any use of vacation time requires pre-approval by an employee's supervisor.  In a letter dated March 8, 2010, from Claudeen Watkins, the District's Human Resources Professional, the District denied plaintiff's February 24, 2010, request for FMLA-covered leave on an intermittent basis.  According to Watkins, her research of whether plaintiff was entitled to take FMLA leave to care for a family member on an intermittent basis revealed that the request was deniable.

On March 8, 2010, plaintiff suffered a serious workplace injury to her back.  Plaintiff was out of work on Worker's Compensation from March 9-19, 2010.  Plaintiff's first day back to work after her injury of March 8, 2010, was Monday, March 22, 2010.  On March 24, 2010, plaintiff missed the entire day of work.  She did not ask the District to credit this absence as FMLA-covered leave.  On March 30, 2010, plaintiff re-submitted the same FMLA application papers she had previously submitted on February 24, 2010, with the addition of certain printouts of federal statutes or regulations.  On April 20, 2010, plaintiff missed the entire day of work.  She did not ask the District to credit this absence as FMLA-covered leave.  The next day, April 21,

2010, plaintiff missed the entire day of work for "stepdaughter-related" medical reasons. Plaintiff's Absence Form covering that absence stated "F.M.L.A. for stepdaughter" and requested that the District use her paid accrued vacation leave to cover the absence. On April 22, 2010, Watkins prepared a letter responding to plaintiff's re-submitted FMLA request paperwork and denied the request for the same reasons specified in her original letter of March 8, 2010. Watkins' April 22, 2010, letter stated, among other things, "we are not denying you access to the leave time that you have accumulated" and "[i]f in the future your circumstances require the use of FMLA benefits we will certainly evaluate each request in its own merits."

On April 22, 2010, Watkins had a discussion with Sue Eager of the United States Department of Labor. Eager called Watkins at the urging of plaintiff. After the conversation between Eager and Watkins, the District reassessed the accuracy of its earlier denial of plaintiff's request for intermittent FMLA-covered leave. Watkins said the issue was the difference between "family" related medical leave and "medical" leave under the FMLA. The latter was clearly covered by the FMLA while the former was not a guaranteed coverage claim in all circumstances. In late April of 2010, as the District was beginning to reconsider plaintiff's prior FMLA request, Watkins had a conversation with plaintiff in her office about obtaining additional information from her stepdaughter's physician. Plaintiff denied that request and did not give the District permission to speak with any of her stepdaughter's medical providers. Plaintiff asserts in this action that she had no affirmative obligation to permit defendant's representatives to speak with her step-daughter's medical provider.

On Wednesday, April 28, 2010, plaintiff went back out of work on Worker's Compensation due to her March 8, 2010, workplace injury, beginning a lengthy period of absence. On May 5, 2010, Watkins prepared a letter to plaintiff informing her that her absence, beginning

3

April 28, 2010, was being classified as FMLA-covered leave.  On May 10, 2010, Watkins wrote to plaintiff stating "[w]e are also writing to advise you that should you have occasion to return to work prior to the expiration of the 12 weeks guaranteed by the [FMLA], and if you still wish to continue to take FMLA leave in connection with your child's condition, which we discussed earlier, you may reapply for FMLA leave."  Ten days later, on May 20, 2010, plaintiff wrote to Watkins to acknowledge receipt of her May 10 letter, to ask Watkins to highlight the areas on plaintiff's FMLA application that might require additional detail, and to ask Watkins whether the District's FMLA "year" was fixed or rolling.  Watkins responded to plaintiff's May 20 letter with a response dated May 24, 2010.  After Watkins' May 24, response letter, plaintiff did not re-submit her intermittent leave FMLA request to the District until October 2012.

Plaintiff remained out of work from April 28, 2010, through January 24, 2011.  In December 2011, however, the District had noted a discrepancy in connection with payment of plaintiff's Workers Compensation and unemployment insurance claims.  The District became concerned that plaintiff was "double dipping" between these two sources of benefits.  To wit, the District learned that while plaintiff was collecting Workers' Compensation benefits at 50% of her wages and unemployment benefits at 50% of her wages, she failed to advise the District that she had undergone back surgery in December 2011 which rendered her totally disabled.  After her surgery, she began collecting Workers Compensation benefits at 100% of her weekly wages while continuing to collect unemployment insurance.  Watkins contacted the New York State Department of Labor ("DOL") regarding her suspicion of what plaintiff had done.  In response to an inquiry by an investigator at the DOL named Greg Donahue, Watkins sent a fax dated March 24, 2011, which described the various periods of leave plaintiff had taken pursuant to Workers Compensation.  At the end of the letter, Watkins stated, "I would like to have grounds to fire this

employee or make her resign."

In June 2006, the District's former Director of Operations, Ben Gladding, had issued a formal memorandum to all employees on the District's 3 p.m. to 11 p.m. shift setting their break times as 6:00-6:20 p.m. and 9:00-9:15 p.m.. Plaintiff received a copy of Gladding's memorandum, but refused to sign it as an acknowledgment of receipt, although expressly requested to do so. Defendant contends that after he succeeded Gladding as the Director of Operations, the new Director of Operations, William Seguin, did not make any changes to assigned break times. Plaintiff disputes this and states that Seguin "modified" the policy by advising employees that as long as he did not receive complaints, "they would not hear from him."[1]

According to defendant, in the fall 2011, the Superintendent of Schools, Roger Clough II,

---

[1]

When asked at his deposition about employees taking time in excess of the allotted break policy, Seguin testified as follows:

> Q:    Am I correct that essentially in your mind as long as people were getting their job done it didn't really matter if they took long breaks?
>
> A:    I didn't state it that way.
>
> Q:    Okay. How would you state it?
>
> A:    I do recall that when I first took over I had a general meeting with all my employees, and I recall saying that we all know what needs to be done for work here and as long as I didn't get any complaints that they would never hear from me, and if the work was getting done. I was trying to say, you know, just - -
>
> Q:    Do your job?
>
> A:    Do your job basically, yeah. In fact I sometimes tell everyone we're all taxpayers in this District, so I recall telling certain employees that if you're not doing your job, then you're only hurting yourself as a taxpayer.

5

tasked Seguin to conduct an investigation to ensure that cleaning staff employees working on the night shift were performing their jobs diligently.  On a particular night in September 2011, Superintendent Clough reported to Seguin that he had personally observed two cleaners walking outside and not working, for an extended period of time.  Clough identified the cleaners as Tina Rockhill and Thelma McCarthy, both assigned to the High School.  Clough informed Seguin that the cleaners' time spent outside far exceeded their allotted break time.  Sometime during the second week of October 2011, Clough told Seguin to begin monitoring all night shift employees to ensure compliance with published break times.  He instructed Seguin to take spot checks and to use the school's surveillance cameras to make sure the employees were working diligently.

Defendants assert that Seguin began reviewing recorded electronic surveillance camera footage dated October 17, 2011, from each of the District's school buildings.  Upon review of surveillance camera footage recording the night shift work at Massena Central High school, Seguin noticed a distinct pattern among three employees.  On many occasions, sometimes twice in the same night, the same three cleaners tended to vastly exceed their assigned break times.  The three cleaners were Tina Rockhill, Thelma McCarthy, and plaintiff.  Although all of the High School night shift employees exceeded the published break times on some occasions, Ms. Rockhill, Ms. McCarthy and plaintiff routinely spent an hour for breaks that were intended to last either 15 or 20 minutes.  During the same period of time, Seguin observed that no other employee appeared to spend more than about 45 minutes on break, and those that spent that much time on break were isolated circumstances.

After conducting investigatory interviews on all the members of the High School's night shift cleaning crew, Seguin avers that he and Ms. Watkins concluded that the pattern of "egregiously" abusing break time by Ms. Rockhill, Ms. McCarthy and plaintiff stretched back at

6

least two years.  On November 9, 2011, Seguin placed Ms. Rockhill, Ms. McCarthy and plaintiff

on paid suspension.  On recommendation from Superintendent Clough, the District's Board of

Education resolved on November 17, 2011, to change the three cleaners' suspension status from

paid to unpaid.  The unpaid suspension took effect on November 18, 2011.   In its meeting of

December 1, 2011, the District's Board of Education resolved to terminate Ms. Rockhill, Ms.

McCarthy and plaintiff .  All three individuals were part of the same board resolution.  The

termination took effect the next day, December 2, 2011.  Each of the three terminated cleaners

filed grievances protesting their respective terminations.  Each of the grievances progressed to a

labor arbitration hearing before a neutral arbitrator.  Plaintiff also filed the present complaint

alleging violations of her rights under the FMLA in March 2012.

Plaintiff's arbitration hearing occurred on August 13, 2012.  Testimony was taken and a

record was produced.  After the end of her arbitration hearing, the arbitrator found that plaintiff

had demonstrated misconduct and time abuse.  However, the arbitrator decided that defendant had

applied its decision to terminate plaintiff for her "theft of services" unevenly when it failed to

terminate others charged with the same misconduct.  Indeed, plaintiff asserts that Seguin testified

at his deposition that he and the District practiced a "progressive" disciplinary policy which

included informal counseling, followed by formal verbal counseling, followed by written

counseling, followed by a second written counseling, followed by suspension and then

termination.  Aside from Ms. Rockhill, Ms. McCarthy and plaintiff, no other employee had been

terminated from the custodial department during Seguin's five year tenure without having been

through a progressive disciplinary process.  Seguin testified that he had previously issued verbal

warnings to employees who he observed taking breaks beyond their break time.  Seguin also stated

he had never received any complaints about plaintiff's job performance.  Moreover, Claudeen

Watkins testified that she had never counseled plaintiff or issued any verbal warnings prior to her termination. In a decision dated October 16, 2012, the arbitrator ordered the District to put plaintiff back to work. The arbitrator also ordered that plaintiff should receive back pay covering her time on unpaid suspension and after termination. In lieu of termination, the arbitrator instituted a penalty of, among other things, five months' loss of pay and benefits .

In October 2012, after returning to work, plaintiff re-submitted her request for intermittent FMLA coverage based on her stepdaughter's medical condition. The District approved the request in a letter from Watkins dated October 26, 2012. On November 28, 2012, the District credited one day of sick leave and a half day of personal leave back to plaintiff's leave bank. The District explained that the reimbursement was being made in response to her contentions that her February 24, 2010, FMLA request had been wrongly denied.

## III.     DISCUSSION

A.     Applicable Standard

Summary judgment is appropriate when there is no genuine issue with regard to any material fact, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Stated otherwise, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When deciding a summary judgment motion, the Court must "resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999).

B.     Interference Under the FMLA

In the first cause of action, plaintiff alleges that defendant denied plaintiff her rights under

29 U.S.C. § 2611, more specifically, defendant interfered with her right to utilize FMLA qualified leave and later retaliated against her for having requested leave under the Act by terminating her.

1.    The Statute

The FMLA entitles covered employees to take up to 12 weeks of leave per year to care for a spouse, parent, or child that has a serious health condition, or for the employee's own serious health condition that makes the employee unable to perform the functions of his or her position. 29 U.S.C. §§ 2612 (a) (1) (C), (a) (1) (D), (b).  "The term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611 (11) (A) (B).

"Section 2615 (a) (1) of the FMLA states that '[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter'".  *Potenza v. City of New York*, 365 F.3d 165, 167 (2d Cir. 2004) (citing 29 U.S.C. § 2615(a)(1)).  An employee may bring an interference claim against the employer when "the employer in some manner impeded the employee's exercise of [the] right[s] afforded substantive protection under the FMLA."  *Nichik v. New York City Transit Auth.*, 2013 WL 142372, at *12–13 (E.D.N.Y .2013) (citing *Sista v. CDC Ixis N. Am., Inc*., 445 F.3d 161, 176 (2d Cir.2006)).

2.    Applicable Standard

To state a *prima facie* claim for interference under the FMLA, the plaintiff must allege: (1) she is an eligible employee; (2) the defendant qualifies as an employer under the FMLA; (3) the plaintiff was entitled to take leave under the FMLA; (4) the plaintiff gave notice to the defendant of her intention to take leave; and (5) the defendant denied the plaintiff benefits to which she was entitled under the FMLA.  *See Brown v. Pension Bds*., 488 F .Supp.2d 395, 408 (S.D.N.Y. 2007).

9

It is important to note that the Second Circuit has recognized a "split" in the approach taken in analyzing FMLA "interference" claims and FMLA "retaliation"claims. *Sista v. CDC Ixis North America, Inc*., 445 F.3d 161, 175 (2d Cir. 2006) (citing *Potenza v. City of New York*, 365 F.3d 165, 167 (2d Cir. 2004). The first approach insists on extending the familiar *McDonnell Douglas* burden shifting approach to retaliation claims under 29 U.S.C. § 2615 (a) (2) of the FMLA (it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter [of the FMLA]"). *See id.* The statute also makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a) (1)." *See id.* The Second Circuit noted that "violation of § 2615 (a) (1) involves **interfering** with the exercise of rights given by the FMLA rather than **retaliating against** those who make use of their rights." *See id.* (citing *Brungart v. BellSouth Telecomms., Inc*., 231 F.3d 791 (11th Cir. 2000) (emphasis in original). Under this second approach:

> [a plaintiff] need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her. She can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both .... No scheme shifting the burden of production back and forth is required.

*See Sista*, 445 F.3d at 176 (citing *Potenza,* 365 F.3d at 167-68) (quoting *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001)) (alteration in *Potenza* ). The Second Circuit "noted with some favor the manner in which the Seventh Circuit had distinguished the approaches:"

> A case from the Seventh Circuit emphasizes that the difference between the two approaches inheres in the relevance of the employer's intent to the determination of whether or not a violation has occurred. *See King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th

10

> Cir.1999). According to this account, it would be appropriate to apply the *McDonnell Douglas* analysis to claims of retaliation—where the employer's intent is material—but not to assertions of interference—where the question is simply whether the employer in some manner impeded the employee's exercise of his or her right.

*Potenza*, 365 F.3d at 168. But, because *Potenza* involved a retaliation claim rather than an interference claim, the Second Circuit did not "decide whether or not to adopt the Seventh Circuit's analysis in its entirety." *Id.* Rather the Court determined only that retaliation claims would be governed by the *McDonnell Douglas* analysis. *Id.*

Based on the above, the Court finds that the *McDonnell Douglas* burden shifting analysis only applies to plaintiff's retaliation claim which will be discussed further below.

3.    *Prima Facie* Case of FMLA Interference

For the purposes of the present summary judgment motion, defendant concedes that plaintiff has established a *prima facie* case of FMLA interference with allegations that it denied wrongfully her request for intermittent leave to care for her step-daughter in February 2010. However, defendant contends that plaintiff has failed to show she was prejudiced by it's interference with her FMLA rights. To bring a successful action under the FMLA, an employee must show (1) that the employer interfered with, restrained, or denied the rights protected by the FMLA, and (2) that the employee has been prejudiced by the violation. *See Roberts v. Health Ass'n*, 308 Fed. Appx. 568, 570 (2d Cir. 2009) (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)). "The employer is liable only for compensation and benefits lost by reason of the violation, for other monetary losses sustained as a direct result of the violation, and for appropriate equitable relief, including employment, reinstatement, and promotion." *Id.* (internal quotation marks and citations omitted).

Here, defendant asserts that plaintiff lost only one and a half work days of leave under the

FMLA due to its interference and she has been reimbursed for that time. In response to defendant's argument that she has incurred no out-of-pocket expenses in connection with its failure to respect her FMLA leave, and thus cannot show prejudice, plaintiff makes two claims. First, plaintiff contends that she was forced to commence a lawsuit to recover leave time she was entitled to under the FMLA and has incurred attorneys fees as a result. However, it is apparent from review of the record that defendant advised plaintiff she was free to re-submit the FMLA claim filed for leave taken in the care of her stepdaughter which it had denied on May 10, 2010. This notification was sent to plaintiff long before she file the lawsuit. Plaintiff did not resubmit the claim, however, until October 2012, after she had filed the present action. Moreover, there is no legal support for plaintiff's claim that evidence she incurred attorney's fees is sufficient to demonstrate prejudice, particularly as attorney's fees are explicitly recoverable only "in addition to any judgment awarded" under the Act. 29 U.S.C. § 2617 (a) (3).

Plaintiff also asserts that she was prevented from taking additional protected leave to which she was entitled had she known and had the assurance that her requested time would be protected under the FMLA. For the first time in opposition to summary judgment, plaintiff states she would have used "at least three days" in March 2010 to care for her step-daughter but did not do so because if those days were not considered FMLA leave she could be disciplined or fired for taking too much leave. However, when she was asked about days she wanted to take off but did not do so during her deposition, she could not remember any specific days. It is of course "axiomatic that a party cannot defeat summary judgment by submitting an affidavit that contradicts prior sworn deposition testimony." *United Magazine Co. v. Murdoch Magazines Distribution, Inc.*, 393 F.Supp.2d 199, 212 (S.D.N.Y. 2005); *see Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995) ("It is well settled in this circuit that a party's affidavit which contradicts his own prior

deposition testimony should be disregarded on a motion for summary judgment."). Consequently, the Court finds that plaintiff's allegations concerning "three days" she would have taken in March 2010 under the FMLA but for defendant's interference with her rights should be rejected. Although defendant's interference with plaintiff's FMLA rights is undisputed in this case, there is no evidence that the violation was prejudicial. Thus, the claim must be dismissed.

C.    Retaliatory Discharge Under the FMLA

1.    Applicable Standard

FMLA retaliation claims are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp.*, 411 U .S. 792.[2] To establish a *prima facie* claim for FMLA retaliation, a plaintiff must demonstrate that: "(1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Reilly v. Revlon, Inc.*, 620 F.Supp.2d 524, 537–38 (S.D.N.Y. 2009). If the plaintiff establishes a *prima facie* case, there is a presumption of retaliation, and the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the termination. *See Debell v. Maimonides Med. Ctr.*, No. 09–CV–3491, 2011 WL 4710818, at *8 n. 4 (E.D.N.Y. Sept. 30, 2011). If the defendant makes such a showing, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered legitimate reason for her termination was pretextual. *See id.* "To defeat summary judgment, a plaintiff need not show that a defendant's proffered reason was false or

---

2

As discussed above, the Second Circuit has never "definitively applied the burden-shifting framework" to FMLA retaliation claims, *Donnelly v. Greenburgh Cent. Sch. Dist.* No. 7, 691 F.3d 134, 147 (2d Cir. 2012), it is common practice to do so. *See Thomsen v. Stantec, Inc.*, 483 F. App'x 620, 623 (2d Cir. 2012) (summary order); *Roberts v. Health Ass'n*, 308 F. App'x 568, 570 (2d Cir. 2009) (summary order); *Potenza*, 365 F.3d at 167–68.

played no role in the decision to terminate h[er], but only that it was not the only reason, and that h[er] filing for FMLA leave was at least one motivating factor." *Id.* at *10.

2.    *Prima Facie* Case of FMLA Retaliation

In connection with this claim, defendant asserts that plaintiff cannot establish a *prima facie* case of retaliation because there is no temporal connection between plaintiff's protected activity under the FMLA in February and March 2010 and her termination in December 2011.  To wit, defendant asserts that the investigation which led to plaintiff's termination did not even begin until October 2011, more than a year and half after plaintiff made her last request under the FMLA. However, the Second Circuit has held that there is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between a protected activity and an alleged retaliatory action."  *Gonzalez v. Carestream Health, Inc.*, 520 Fed. Appx. 8, 11 n. 2 (2d Cir. 2013) (quoting *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 131 (2d Cir. 2012)).  But evidence of temporal proximity alone will not defeat summary judgment here.  Temporal proximity - while enough to support a *prima facie* case - is insufficient to establish pretext.  *See Ben-Levy v. Bloomberg, L.P.*, 518 Fed. Appx. 17, 19 (2d Cir. 2013) (citing *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010)).

Plaintiff contends evidence that defendant applied its disciplinary policy unevenly with respect to plaintiff and the others terminated with her in connection with the time abuse investigation is evidence that her FMLA activity was a motivating factor in the decision to terminate her.  But it is undisputed that one of the three employees terminated as a result of the time abuse investigation had never filed a claim for benefits under the FMLA.  Thus, there is no proximal connection between the decision to terminate these three employees and their having engaged in protected FMLA activity.  Plaintiff also contends that the letter of Claudeen Watkins

14

wherein she stated that she wished she could find grounds to fire plaintiff or make her resign is evidence that plaintiff's FMLA leave was a motivating factor in defendant's decision to terminate her. However, the Court notes that the letter does not specifically refer to plaintiff having requested leave under the FMLA. Watkins' letter, addressed to a DOL investigator, clearly addressed time periods for which plaintiff had been paid pursuant to Workers Compensation insurance and unemployment insurance. While the letter clearly shows that Watkins was hoping to find a reason to terminate plaintiff, the Court cannot does not find that this letter satisfies plaintiff's *prima facie* burden to present evidence showing discriminatory intent in violation of the FMLA.

Even if this was not true, however, defendant has presented the affidavit of William Seguin who stated that during his investigation of employee time abuse, he determined that plaintiff had committed two separate acts of misconduct - the time abuse itself and failing to be honest during the investigation. These conclusions were affirmed by the factual findings of the arbitrator who reviewed plaintiff's grievance. Seguin said that he learned that since plaintiff and the other two individuals terminated along with her were not protected by the Civil Service law, formal charges were not necessary as a precursor to taking disciplinary action. Superintendent Clough briefed the Board of Education on the results of the investigation and the Board ultimately voted to terminate plaintiff and the other employees. In light of defendant's legitimate, non-discriminatory explanation for its actions, Watkins' letter, even if sufficient to satisfy plaintiff's *prima facie* burden, is not enough - standing alone - to demonstrate pretext. Consequently, plaintiff has failed to establish a cognizable claim for retaliation under the FMLA.

## IV.    CONCLUSION

Based on the foregoing, it is hereby

15

ORDERED that defendant's motion for summary judgment (Dkt. No. 15) is GRANTED, and the complaint is dismissed in its entirety.

IT IS SO ORDERED.

Date:   March 31, 2014

Norman A. Mordue
Senior U.S. District Judge